Matthew T. Findley
Moira K. Smith
ASHBURN & MASON, P.C.
1227 West Ninth Avenue, Suite 200
Anchorage, Alaska  99501
Telephone:  (907) 276-4331
Facsimile:  (907) 277-8235
E-mail:  mtf@anchorlaw.com

Douglas Pope
POPE & KATCHER
421 West First Ave., Suite 220
Anchorage, AK  99501
Telephone:  (907) 272-8577
Facsimile:  (907) 269-7939
E-mail:  dpope@alaska.net

**Attorneys for Plaintiff John Sturgeon**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | | |
|---|---|---|
| JOHN STURGEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. A-11-_____ CV |
| SUE MASICA, GREG DUDGEON, | ) | |
| ANDEE SEARS, NATIONAL PARK | ) | |
| SERVICE, KEN SALAZAR, UNITED | ) | **COMPLAINT FOR** |
| STATES DEPARTMENT OF INTERIOR, | ) | **DECLARATORY JUDGMENT** |
| | ) | **AND INJUNCTIVE RELIEF** |
| Defendants. | ) | |
| _____ | ) | |

John Sturgeon, by and through the undersigned counsel, alleges and pleads as

follows:

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 1 of 21

## JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331.

2.     This court has personal jurisdiction over the individual defendants by virtue of 28 U.S.C. § 1391(e) because the individual defendants reside in this district and because the individual defendants are officers and employees of an agency of the United States and are being named in their official capacity.

3.     This court has jurisdiction over defendants the National Park Service and the Department of the Interior pursuant to 5 U.S.C. § 702.

4.     The relief requested is specifically authorized pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 702.

5.     Pursuant to 28 U.S.C. § 1391(e), venue is proper in this court because the lands subject to this dispute are located in this district, and the events giving rise to this dispute occurred in this district.

6.     An actual controversy presently exists between the parties concerning the validity of various regulations. That controversy is justiciable in character, and speedy relief is needed to preserve plaintiff's rights.

7.     A declaratory judgment will terminate the uncertainty and controversy between the parties.

8.     A permanent injunction, enjoining defendants from enforcing the challenged provisions of the regulations, will protect plaintiff after the final resolution of these proceedings.

## PARTIES

9.     Plaintiff John Sturgeon is a resident of the State of Alaska.

10.     Defendant National Park Service (the "NPS") is a bureau of the United States Department of Interior.

11.     Defendant Sue Masica is employed by the NPS in Alaska as the Director of the Alaska office, and is named as a defendant in that official capacity.

12.     Defendant Greg Dudgeon is employed by the NPS in Alaska as the Superintendent of the Yukon-Charley Rivers National Preserve, and is named as a defendant in that official capacity.

13.     Defendant Andee Sears is employed by the NPS in Alaska as a Special Agent, coordinating law enforcement efforts for the NPS throughout the State of Alaska, and is named as a defendant in that official capacity.

14.     Defendant Ken Salazar is the Secretary of Interior for the United States, and is named as a defendant in that official capacity.

15.     Defendant Department of Interior is an agency of the United States.

## NATURE OF THE LAWSUIT

16.     Plaintiff has been using his small personal hovercraft to hunt moose both within the boundaries of the Yukon-Charley Rivers National Preserve (the "Yukon-

Charley") and upriver from the park boundaries since 1990. The Yukon and Nation Rivers are navigable waterways, and as such, belong to the State of Alaska. Nonetheless, defendants have asserted the right to enforce NPS regulations on the portions of the Yukon and Nation Rivers within the boundaries of the Yukon-Charley (including the NPS regulation barring the use of hovercrafts), and have further asserted the right to enforce NPS regulations on all navigable waterways belonging to the State of Alaska that lie within NPS conservation system unit boundaries. Accordingly, defendants have threatened plaintiff with criminal penalties if he operates his hovercraft on navigable waters belonging to the State of Alaska that fall within the boundaries of the Yukon-Charley.

17. Defendants' attempts to enforce NPS regulations on navigable waterways belonging to the State of Alaska within the Yukon-Charley are contrary to federal law. When Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA"), it made clear in the text of the statute that for lands placed within NPS boundaries created or expanded by ANILCA, NPS regulations solely applicable to public lands within federal conservation system units would not apply to lands that belonged to the State of Alaska. For over fifteen years after ANILCA was enacted, the NPS abided by this Congressional restriction on its authority, and its regulations did not purport to authorize the NPS to enforce its regulations on State lands, including navigable waters, within NPS conservation system unit boundaries created or expanded by ANILCA.

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 4 of 21

18.     The NPS altered its regulations, unlawfully, in 1996 to authorize enforcement of its regulations "within the reach of navigable waters located within the boundaries of park areas in Alaska" – without regard to whether these navigable waters were owned by the State of Alaska.  This revised regulation violates the plain language and intent of ANILCA.  Defendants' attempts to enforce NPS regulations barring the use of hovercraft within NPS boundaries on navigable waters belonging to the State of Alaska within the Yukon-Charley are thus unlawful and must cease.

19.     Plaintiff has repeatedly tried to resolve this issue with the NPS in order to resume using his personal hovercraft to access navigable waterways belonging to the State of Alaska, but to no avail.  In light of the NPS's refusal to respond to plaintiff and end its unlawful behavior, plaintiff brings the present action in order to permit him to resume using his hovercraft to hunt moose where he has hunted for over twenty years, and to stop the NPS from unlawfully enforcing its regulations on State lands, including navigable waterways, within NPS conservation system units created or expanded by ANILCA.

## FACTS GIVING RISE TO THIS LAWSUIT

20.     Plaintiff has held a resident hunting license in Alaska for the past 40 years, and prior to this controversy, had annually hunted moose on the Yukon River down river from Eagle, Alaska, and its tributary the Nation River, since 1971.

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 5 of 21

21.     The Yukon River is navigable all the way from the Canadian border to where it empties into the Bering Sea.  The Nation River is navigable all the way from the Yukon River to the Canadian border.[1]

22.     The Yukon and the Nation Rivers, as navigable rivers, are subject to the Submerged Lands Act of 1953.[2]  Pursuant to that Act and the "equal footing doctrine," the State of Alaska owns the submerged lands within the banks of those rivers,[3] and the State since statehood has been vested with the authority to manage access by watercraft and other vessels on those rivers.[4]

23.     During all relevant times the State of Alaska has issued licenses to Sturgeon for various watercrafts he has used to hunt moose on the Yukon and Nation Rivers.

24.     In 1980, Congress passed ANILCA, which created or added 104.3 million acres to various federal conservation system units in Alaska, including those managed by the NPS.  As part of this expansion of federal acreage, ANILCA established the Yukon-Charley as a management unit of the NPS in east-central Alaska, west of the village of Eagle, and committed various "public lands" to the Preserve.[5]  Included within the

---

[1] *See Alaska v. United States*, 201 F.3d 1154, 1162-64 (9th Cir. 2000).

[2] 43 U.S.C. § 1311 (a).

[3] *See United States v. Alaska,* 521 U.S. 1, 5-6 (1997); *State Dept' of Natural Res. v. Alaska Riverways, Inc.*, 232 P.3d 1203, 1213-16 (Alaska 2010).

[4] *See CWC Fisheries, Inc. v. Bunker*, 755 P.2d 1115, 1117-18 (Alaska 1988) (under the public trust doctrine, the State holds title to the beds of navigable waters "in trust for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein freed from the obstruction or interference of private parties" (internal citations omitted).).

[5] 16 U.S.C. § 410hh(10).

boundaries of the Yukon-Charley are approximately one hundred miles of the Yukon River, and the lower six miles of the Nation River.

25. Under ANILCA, the term "public lands" includes:

> [L]and situated in Alaska which, after December 2, 1980, are Federal lands, except – land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska or the State under any other provision of Federal law.[6]

Because the State of Alaska owns the submerged lands underneath the Yukon and Nation Rivers, these submerged lands are specifically excepted from ANILCA's definition of "public lands."

26. Consistent with the definition of "public lands," ANILCA also provided that:

> Only those lands within the boundaries of any conservation system unit which are public lands (as such term is defined in this Act) shall be deemed to be included as a portion of such unit.  No lands which, before, on, or after December 2, 1980, are conveyed to the State, to any Native Corporation, or to any private party shall be subject to the regulations applicable solely to public lands within such units.[7]

This provision confirms that the Yukon and Nation Rivers, as navigable waterways conveyed to the State of Alaska at statehood, are not "public lands" committed to the Yukon-Charley and are not subject to NPS (and other) regulations applicable solely to "public lands" within conservation system units established by ANILCA.

---

[6] 16 U.S.C. § 3102(3)(A).

[7] 16 U.S.C. § 3103(c).

27.     Prior to the vote on the final version of ANILCA, Congress confirmed its intent that ANILCA only applied to public lands, and not to any State or private lands. Specifically, a "legislative history to accompany House Concurrent Resolution" was placed in the Congressional Record which addressed the statutory language quoted in the preceding paragraph:

> The concurrent resolution would revise the Alaska National Interest Lands Conservation Act by. . . [s]pecifying that only public lands (and not State or private lands) are to be subject to the conservation unit regulations applying to public lands.[8]

28.     Consistent with the plain language of ANILCA and congressional intent, the NPS initially defined its authority in Alaska under ANILCA as limited to lands and waters explicitly owned by the federal government and those private lands "under legislative jurisdiction of the United States," and specifically clarified via a 1987 revision to 36 C.F.R. § 1.2(b) that NPS regulations "do not apply on non-federally owned lands and waters . . . within the boundaries of a park area."[9]

29.     In July of 1996, defendant NPS reversed its long-standing policy and interpretation of its authority in NPS conservation system units in Alaska and enacted a regulation, contrary to the plain language and intent of ANILCA, stating that NPS regulations applied "within the reach of navigable waters located within the boundaries of

---

[8] *See* Congressional Record–Senate, December 1, 1980, pp. 31108-31110.

[9] *See General Regulations for Areas Administered by the National Park Service*, 48 Fed. Reg. 30261, 30275 (June 30, 1983); *Applicability of Regulations to Non-Federal Lands and Waters Under U.S. Legislative Jurisdiction*, 52 Fed. Reg. 12037 (April 14, 1987); *Applicability of Regulations to Non-Federal Lands and Waters Under U.S. Legislative Jurisdiction*, 52 Fed. Reg. 35238-39 (Sept. 18, 1987).

park areas in Alaska."[10]  These regulations amended 36 C.F.R. § 1.2 by removing the language in § 1.2(b) dictating that NPS regulations "do not apply on non-federally owned lands and waters . . . within the boundaries of a park area" and adding a new § 1.2(a)(3) stating that NPS regulations apply to navigable waters "without regard to the ownership of submerged lands, tidelands, or lowlands."[11]  In doing so, this amendment expanded the scope of applicability of general NPS regulations,[12] and specific NPS regulations governing NPS conservation system units in Alaska.[13]

30.    Among the NPS regulations that the amendment in the preceding paragraph made applicable to state-owned lands is a provision, 36 C.F.R. § 2.17(e), prohibiting the operation of hovercraft within NPS boundaries.  This regulation is solely applicable to public lands (as defined in 16 U.S.C. § 3102(3)(A)) within NPS conservation system unit boundaries.[14]

31.    In 1990, in order to be able to hunt all of the waters of the Nation River, including those waters of the Nation River upriver from the Yukon-Charley boundary, plaintiff purchased a small personal hovercraft, an air cushion craft designed to navigate small rivers, and licensed it with the State of Alaska as a watercraft.

---

[10] *General Regulations for Areas Administered by the National Park Service and National Park System Units in Alaska*, 61 Fed. Reg. 130, 35134 (July 5, 1996).

[11] *Id.*

[12] 36 C.F.R. § 1.1 *et seq.*

[13] 36 C.F.R. § 13.1 *et seq.*

[14] 36 C.F.R. § 1.2.

32.     Throughout the period from 1990 through 2007, plaintiff used the hovercraft for hunting moose on the Yukon River down river from Eagle to the confluence of the Nation and Yukon Rivers.  Plaintiff also used the hovercraft to hunt moose on the Nation River thirty-five to forty miles upriver from the Yukon-Charley boundary.  In particular, plaintiff annually hunted areas he and others referred to as "moose meadows," "black sands," and the "Sturgeon fork;" all areas upriver from the Yukon-Charley park boundary.

33.     In September of 2007, during his annual moose hunting trip, plaintiff entered the Nation River from the Yukon River for the express purpose of taking the hovercraft upriver to hunt "moose meadows" and other stretches of the Nation River beyond the Yukon-Charley boundary.  It became necessary to repair the steering cable for the hovercraft approximately two miles upriver, and plaintiff was engaged in the repairs on a gravel bar located below mean high water, when he was approached by three armed NPS law enforcement employees.  The NPS employees told plaintiff it was a crime for him to operate the hovercraft within the boundaries of the Yukon-Charley.  When plaintiff advised the NPS employees that the hovercraft was being operated on a state-owned navigable river and thus the NPS water regulations did not apply, the NPS employees advised plaintiff that he was incorrect.

34.     Because plaintiff could not remove the hovercraft from within the boundaries of the Yukon-Charley without operating it, plaintiff contacted his counsel in Anchorage via satellite phone.  Plaintiff's counsel then contacted defendant Andee Sears

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 10 of 21

in Anchorage at NPS headquarters, and was advised that plaintiff must remove the hovercraft from within Yukon-Charley boundaries as quickly as possible.

35.     Pursuant to the warnings and commands of NPS employees, plaintiff removed the hovercraft from within the boundaries of the Yukon-Charley.  Because he had been threatened with a crime, plaintiff was unable to hunt moose on the Yukon River and on that part of the Nation River upriver from the Yukon-Charley boundary, but also was unable to hunt moose using the hovercraft on the thirty-five to forty miles of the Nation River drainage above the Yukon-Charley boundary, which is an area entirely outside the park boundaries, including those moose hunting areas locally known as "moose meadows," "black sand," and the "Sturgeon fork."

36.     After returning from his 2007 moose hunt (which was unsuccessful), plaintiff had phone conversations and met with defendant Sears in Anchorage, Alaska. Defendant Sears agreed that the State of Alaska owned the submerged land within the banks of the Yukon and Nation Rivers, but reaffirmed the NPS's position that use of a hovercraft within the boundaries of the Yukon-Charley is a crime, even on navigable waters or on submerged land between the banks of navigable rivers, and warned plaintiff that he would be criminally cited if he ever again operated the hovercraft within the Yukon-Charley.

37.     As a result of these warnings by NPS officials and employees, plaintiff did not use his hovercraft within the boundaries of the Yukon-Charley for the 2008 through

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 11 of 21

2010 hunting seasons, and was not able to hunt areas of the Nation River and the Yukon River that he had previously regularly accessed with the use of his hovercraft.

38.     By asserting that plaintiff cannot operate a hovercraft within the boundaries of the Yukon-Charley because such use is prohibited by NPS regulations, defendants are unlawfully enforcing NPS regulations, which are solely applicable to public lands within federal conservation system units, on navigable waters belonging to the State of Alaska within the boundaries of NPS conservation system units.  Such enforcement is in defiance of the plain language and intent of ANILCA, which makes clear that such regulations are inapplicable to lands that were conveyed to the State of Alaska prior to the enactment of ANILCA.

39.     Defendants' unlawful actions are not limited to plaintiff.  Defendants are improperly enforcing NPS regulations, which are solely applicable to public lands within federal conservation system units, throughout Alaska on navigable waters belonging to the State of Alaska within the boundaries of NPS conservation system units that were created or expanded by ANILCA.  By doing so, defendants are acting in excess of the authority granted to the NPS by Congress under ANILCA.

40.     In an attempt to remedy defendants' overreach, plaintiff, by and through counsel, sent a letter in October 2010 to defendant Salazar, petitioning him to engage in rulemaking to repeal or amend NPS regulations so that the NPS would no longer assert the authority to restrict access on navigable waters located within the boundaries of park areas in Alaska.  A copy of this letter is attached as Exhibit A to this Complaint and is

incorporated into this Complaint. As of the date of filing this Complaint, plaintiff has received no response to that letter.

41.    Faced with this lack of response, plaintiff wrote a letter to the NPS Alaska District Regional Chief Ranger copying defendant Sears on July 26, 2011, requesting confirmation in writing that plaintiff would be cited if he attempted to operate his hovercraft within the Yukon-Charley in the areas plaintiff had traditionally hunted. A copy of this letter is attached as Exhibit B to this Complaint and is incorporated into this Complaint. As of the date for filing this Complaint, plaintiff has received no response to that letter.

42.    Defendants' actions have prevented plaintiff from accessing hunting areas he has traditionally hunted, including large areas traditionally accessed for hunting that are not even within the boundaries of Yukon-Charley. Plaintiff has repeatedly attempted to resolve this issue with the NPS and the Department of the Interior but to no avail. There are no further administrative remedies available to plaintiff and it is futile for plaintiff to attempt to further exhaust any administrative remedies because defendants have made their intentions clear and have refused to respond to plaintiff's attempts to resolve the issue. Further, there is no administrative procedure available to plaintiff to pursue relief before the NPS or the Department of the Interior.

**COUNT I**

**Declaratory Judgment that Defendants May Not Enforce NPS Regulations Prohibiting Operation of Hovercrafts Within NPS Boundaries Against Plaintiff Because Enforcing These Regulations on Navigable Waters Belonging to the State of Alaska Within the Yukon-Charley Violates ANILCA**

43.     Plaintiff incorporates paragraphs 1 through 42 above as if specifically alleged or pled herein.

44.     Defendants have threatened plaintiff with criminal prosecution if he otherwise lawfully operates his hovercraft on navigable waters belonging to the State of Alaska within the boundaries of the Yukon-Charley.  Defendants' unlawful actions have prevented and are preventing plaintiff not only from lawfully hunting areas within the Yukon-Charley, but also from lawfully hunting areas outside of the boundaries of the Yukon-Charley.

45.     Defendants' actions in enforcing NPS regulations in Alaska so as to prevent plaintiff from gaining access with his hovercraft to the Yukon and Nation Rivers within the boundary of the Yukon-Charley, and that portion of the Nation River upriver from the boundary of the Yukon-Charley, violate the express terms and intent of ANILCA, including 16 U.S.C. § 3102(3) and 16 U.S.C. § 3103(c), that state-owned lands, including navigable waters, within federal conservation system units created or expanded by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

46.     Plaintiff is entitled to an order pursuant to 28 U.S.C. §§ 2201-2202, declaring and adjudging that any attempts to enforce NPS regulations that are solely

applicable to public lands within federal conservation system units, including 36 C.F.R. § 2.17(e) (which bars the use of hovercraft within NPS conservation system units), on lands belonging to the State of Alaska that are within NPS conservation system units created or expanded by ANILCA (which include navigable waters in the Yukon-Charley), are void as applied to plaintiff.

## COUNT II

### Declaratory Judgment that NPS Enforcement of Regulations Applicable Solely to Public Lands Within Federal Conservation System Units On Lands Belonging to the State of Alaska Violates ANILCA

47.     Plaintiff incorporates paragraphs 1 through 46 above as if specifically alleged or pled herein.

48.     Defendants have threatened plaintiff with criminal prosecution if he otherwise lawfully operates his hovercraft on navigable waters belonging to the State of Alaska within the boundaries of the Yukon-Charley. Defendants' unlawful actions have prevented and are preventing plaintiff not only from lawfully hunting areas within the Yukon-Charley, but also from lawfully hunting areas outside of the boundaries of the Yukon-Charley.

49.     Defendants' actions in enforcing NPS regulations in Alaska so as to prevent plaintiff from gaining access with his hovercraft to the Yukon and Nation Rivers within the boundary of the Yukon-Charley, and that portion of the Nation River upriver from the boundary of the Yukon-Charley, violate the express terms and intent of ANILCA, including 16 U.S.C. § 3102(3) and 16 U.S.C. § 3103(c), that state-owned lands, including

navigable waters, within federal conservation system units created or expanded by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

50.     The NPS regulations enacted in 1996 purporting to authorize the NPS to enforce its regulations "within the reach of navigable waters located within the boundaries of park areas in Alaska" are directly contrary to the plain language and intent of ANILCA, and are enacted in excess of the statutory authority granted the NPS under ANILCA, and are thus void.

51.     Plaintiff is entitled to an order pursuant to 28 U.S.C. §§ 2201-2202 declaring and adjudging that any regulations purporting to authorize the NPS to enforce regulations which are solely applicable to public lands within conservation system units on lands owned by the State of Alaska, including navigable waters, within NPS conservation units created or expanded by ANILCA are void.

## COUNT III

### Temporary and Permanent Injunction Enjoining Defendants From Enforcing NPS Regulations Prohibiting Operation of Hovercrafts Within NPS Boundaries Against Plaintiff When Plaintiff Is Operating a Hovercraft on State-Owned Navigable Waters Within the Yukon-Charley

52.     Plaintiff incorporates paragraphs 1 through 51 above as if specifically alleged or pled herein.

53.     Defendants have threatened plaintiff with criminal prosecution if he otherwise lawfully operates his hovercraft on navigable waters belonging to the State of Alaska within the boundaries of the Yukon-Charley.  Defendants' unlawful actions have

prevented and are preventing plaintiff not only from lawfully hunting in areas within the Yukon-Charley, but also from lawfully hunting in areas outside of the boundaries of the Yukon-Charley.

54.     Defendants' actions in enforcing NPS regulations in Alaska so as to prevent plaintiff from gaining access with his hovercraft to the Yukon and Nation Rivers within the boundary of the Yukon-Charley, and that portion of the Nation River upriver from the boundary of the Yukon-Charley, violate the express terms and intent of ANILCA, including 16 U.S.C. § 3102(3) and 16 U.S.C. § 3103(c), that state-owned lands, including navigable waters, within federal conservation system units created or expanded by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

55.     Plaintiff is entitled to an order pursuant to Federal Rule of Civil Procedure 65 temporarily or permanently restraining or enjoining defendants from interfering with plaintiff's operation of his hovercraft on state-owned navigable waters within the Yukon-Charley.

## COUNT IV

### Temporary and Permanent Injunctions Enjoining Defendants From Enforcing NPS Regulations That Are Solely Applicable to Public Lands Within Conservation System Unit Boundaries on Lands Belonging to the State of Alaska

56.     Plaintiff incorporates paragraphs 1 through 55 above as if specifically alleged or pled herein.

57.    Defendants have threatened plaintiff with criminal prosecution if he otherwise lawfully operates his hovercraft on navigable waters belonging to the State of Alaska within the boundaries of the Yukon-Charley.  Defendants' unlawful actions have prevented and are preventing plaintiff not only from lawfully hunting in areas within the Yukon-Charley, but also from lawfully hunting in areas outside of the boundaries of the Yukon-Charley.

58.    Defendants' actions in enforcing NPS regulations in Alaska so as to prevent plaintiff from gaining access with his hovercraft to the Yukon and Nation Rivers within the boundary of the Yukon-Charley, and that portion of the Nation River upriver from the boundary of the Yukon-Charley, violate the express terms and intent of ANILCA, including 16 U.S.C. § 3102(3) and 16 U.S.C. § 3103(c), that state-owned lands, including navigable waters, within federal conservation system units created or expanded by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

59.    The NPS regulations enacted in 1996 purporting to authorize the NPS to enforce its regulations "within the reach of navigable waters located within the boundaries of park areas in Alaska" are directly contrary to the plain language and intent of ANILCA, were enacted in excess of the statutory authority granted the NPS under ANILCA, and are thus void.

60.    Plaintiff is entitled to an order pursuant to Federal Rule of Civil Procedure 65 temporarily or permanently restraining or enjoining defendants from enforcing NPS

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 18 of 21

regulations, which are solely applicable to public lands within federal conservation system units, on lands belonging to the State of Alaska, including navigable waters, within the boundaries of NPS conservation system units in Alaska that were created or expanded by ANILCA.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for the following relief:

1.      For an order declaring and adjudging that enforcement of NPS regulations in Alaska so as to prevent plaintiff from gaining access with his hovercraft to those portions of the Yukon and Nation Rivers within and upriver from the boundaries of the Yukon-Charley Rivers National Preserve are void as applied to plaintiff, because such actions violate the express terms and intent of ANILCA that state-owned lands, including navigable waters, within federal conservation system units created or expanded by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

2.      For an order declaring and adjudging that enforcement of NPS regulations solely applicable to public lands within federal conservation system units on lands owned by the State of Alaska, including navigable waters, within the boundaries of NPS conservation units created or expanded by ANILCA are void, because such actions are inconsistent with the express terms and intent of ANILCA that state-owned lands, including navigable waters, within federal conservation system units created or expanded

by ANILCA would not be subject to federal regulations applicable solely to public lands within federal conservation system units.

3.      For an order declaring that the NPS regulations adopted in 1996 purporting to authorize the NPS to enforce its regulations "within the reach of navigable waters located within the boundaries of park areas in Alaska" are directly contrary to the plain language and intent of ANILCA, were adopted in excess of the statutory authority granted the NPS under ANILCA, and are thus void to the extent such regulations purport to apply to NPS conservation system units created or expanded by ANILCA.

4.      For an order temporarily or permanently restraining or enjoining defendants from preventing plaintiff from otherwise lawfully operating his hovercraft on navigable waters within the Yukon-Charley.

5.      For an order temporarily or permanently restraining or enjoining defendants from enforcing NPS regulations, which are solely applicable to public lands within federal conservation system units, on lands owned by the State of Alaska, including navigable waters, within the boundaries of NPS conservation system units in Alaska created or expanded by ANILCA.

6.      For all reasonable costs and fees permitted by law; and

7.      For such other relief as this court deems just and equitable.

Case 3:11-cv-00183-HRH   Document 1   Filed 09/14/11   Page 20 of 21

Respectfully submitted this 14th day of September 2011, at Anchorage, Alaska.

**Attorneys for Plaintiff John Sturgeon**

s/ [Matthew T. Findley]
ASHBURN & MASON, P.C.
1227 West Ninth Avenue, Suite 200
Anchorage, Alaska  99501
Phone:  (907) 276-4331
Fax:  (907) 277-8235
E-mail:  mtf@anchorlaw.com
Alaska Bar No. 0504009

/s [Moira K. Smith]
ASHBURN & MASON, P.C.
1227 West Ninth Avenue, Suite 200
Anchorage, Alaska  99501
Phone:  (907) 276-4331
Fax:  (907) 277-8235
E-mail:  mks@anchorlaw.com
Alaska Bar No. 0805032

/s [Douglas Pope]
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska  99501
Phone:  (907) 272-8577
Fax:  (907) 269-7939
E-mail:  dpope@alaska.net
Alaska Bar No. 7311064

P:\Clients\10938.001\COMPLAINT 110914.docx

COMPLAINT
*Sturgeon v. Masica, et al.*, No. A-11-_____ CV