IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
JOHN STURGEON,                        )
                                      )
                    Plaintiff,        )
                                      )
    and                               )
                                      )
STATE OF ALASKA,                      )
                                      )
           Plaintiff-Intervenor,      )
                                      )
         vs.                          )
                                      )
KEN SALAZAR, et al.,                  )
                                      )   No. 3:11-cv-0183-HRH
                    Defendants.       )
_____)
```

O R D E R

Motion to Dismiss

Defendants move to dismiss the First, Second, and Fourth Claims for Relief in the State of Alaska's second amended complaint.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is John Sturgeon. Plaintiff-intervenor is the State of Alaska. Defendants are Ken Salazar, Jonathan Jarvis, Sue Masica,

---

[1]Docket No. 48.

[2]Docket No. 49.

-1-

the National Park Service, and the United States Department of the Interior.

This case involves a challenge to the National Park Service (NPS) regulation found at 36 C.F.R. § 1.2(a)(3). Section 1.2(a)(3) provides that National Park Service regulations

> apply to all persons entering, using, visiting, or otherwise within:
>
> * * *
>
> (3) Waters subject to the jurisdiction of the United States located within the boundaries of the National Park System, including navigable waters and areas within their ordinary reach (up to the mean high water line in places subject to the ebb and flow of the tide and up to the ordinary high water mark in other places) and without regard to the ownership of submerged lands, tidelands, or lowlands[.]

36 C.F.R. § 1.2(a)(3). Section 1.2(a)(3) was promulgated in 1996.

In its second amended complaint in intervention, the State alleges that "[o]n [its] face, the regulation[] at 36 C.F.R. § 1.2(a)(3) violate[s] federal law because the regulation[] state[s] that [it] appl[ies] to Alaska-owned land and waters. Section 103 of ANILCA, 16 U.S.C. § 3103(c), prohibits application of national park regulations to State-owned lands and waters."[3] The State also alleges that "the Park Service's application and enforcement of the regulations at issue in this case have directly interfered with Alaska's ability as a sovereign to manage and regulate its lands and

---

[3]Second Amended Complaint in Intervention for Declaratory Judgment and Injunctive Relief at 11, ¶ 49, Docket No. 45.

-2-

waters and the resources they contain."[4] The State alleges the following examples of application of Section 1.2(a)(3):

1) in 2011, "a regional telecommunications provider" was required "to obtain a special use permit to lay underwater fiber-optic cable on the bed of a State navigable waterway (Lake Clark), even though no national park uplands [were] touched."[5]

2) in 2010, Alaska state employees were told "that a specimen collection permit was required to conduct genetic sampling work that would take place solely on a State-owned navigable waterway (the Alagnak River) located with the boundaries of Katmai National Park and Preserve."[6]

3) in 2009, "a private individual" was required "to apply for a permit to transport material between Dan Creek and McCarthy inside Wrangell-St. Elias National Park and Preserve along a route that follows the Nizina River, which is navigable."[7]

4) in 2008, "individuals who landed a private helicopter on a tributary of the Noatak River for recreational pur-

---

[4] Id. at 12, ¶ 51.

[5] Id. at ¶ 52a.

[6] Id. at ¶ 52b.

[7] Id. at ¶ 52c.

-3-

poses" were issued a warning by the NPS that stated, "pursuant to federal regulations, personal use helicopters landings were not allowed in Noatak National Preserve or any other unit of the national park system."[8]

5) in 2008, "an individual who provided guided kayak day-excursions to Bear Glacier Lake in Kenai Fjords National Park" was told "that he was required to obtain a commercial use authorization, even though the lake was accessed from marine waters and he and his clients did not touch park uplands."[9]

6) in 2007 and 2008, John Sturgeon was told "that he could not take his hovercraft on the Yukon or Nation rivers – both of which are navigable waterways - within Yukon-Charley Rivers National Preserve. Notwithstanding the fact that hovercraft are legal under state law, they are considered off-road vehicles and not allowed in National Parks in Alaska...."[10]

7) in 2007, "a dog mushing tour operator in Yukon-Charley Rivers National Preserve" was told "that he was required to obtain a commercial use authorization to take clients

---

[8] Id. at ¶ 52d.

[9] Id. at ¶ 52e.

[10] Id. at 14, ¶ 52f.

>           ... along the Yukon and Tatonduk rivers even though the
>           tours did not touch park uplands."[11]
>
>      8)  in 2006, "commercial sport fish guides" were told "that
>           all guides must have a commercial use authorization to
>           operate in the Naknek River in Katmai National Park and
>           Preserve even though there was no associated park upland
>           use."[12]

On September 30, 2010, the State "filed a petition for rulemaking with Secretary Salazar, ... asking that 36 C.F.R. § 1.2(a)(3) be repealed or amended to exclude Alaska[.]"[13] "On January 13, 2012, the Deputy Director of Operations for the National Park Service denied the State of Alaska's petition for rulemaking."[14]

The State asserts four Claims for Relief in its second amended complaint in intervention. In its First Claim for Relief, the State seeks a declaration that the regulations at 36 C.F.R. § 1.2(a)(3) and 36 C.F.R. § 13.2[15] are void because they violate federal law.[16]

---

[11] Id. at ¶ 52g.

[12] Id. at ¶ 52h.

[13] Id. at 11, ¶ 44.

[14] Id. at ¶ 45.

[15] 36 C.F.R. § 13.2 addresses the applicability and scope of the regulations in Part 13, which pertains to the national park system in Alaska.

[16] Second Amended Complaint in Intervention at 15, ¶¶ 56-57, Docket No. 45.

-5-

The State alleges that "[o]n their face, the regulations at 36 C.F.R. § 1.2(a)(3) and 36 C.F.R. § 13.2 violate section 103(c) of ANILCA, ..., which excludes State-owned lands and waters from units of the national park system in Alaska and prohibits application of Park Service regulations on such lands and waters."[17]

In its Second Claim for Relief, the State seeks a declaration that the regulations in question are void "because their application to Alaska owned lands and waters violates section 103(c) of ANILCA[.]"[18] The State alleges that "[t]he application and enforcement of the regulations at 36 C.F.R. § 1.2(a)(3) and 36 C.F.R. § 13.2 by the National Park Service to State-owned waters violates section 103(c) of ANILCA ... which excludes State-owned lands and waters from units of the national park system in Alaska and prohibits application of Park Service regulations to such lands and water."[19]

In its Third Claim for Relief, the State seeks review of the denial of its petition for rulemaking, alleging that the denial was "arbitrary, capricious, and [an] abuse of discretion and otherwise not in accordance with the law[.]"[20]

---

[17]Id. at 15, ¶ 56.

[18]Id. at 15.

[19]Id. at ¶ 58.

[20]Id. at 16, ¶ 60.

In its Fourth Claim for Relief, the State seeks a "[p]ermanent injunction prohibiting application or enforcement of the regulations on State-owned lands and waters."[21]

Defendants now move to dismiss the State's First, Second, and Fourth Claims for Relief on the ground that these claims are barred by the statute of limitations.

## Discussion

Defendants' motion to dismiss is brought pursuant to Rules 12(b)(1) and(6), Federal Rules of Civil Procedure. Rule 12(b)(1) has no application here because "federal statutory time limitations on suits against the government are not jurisdictional in nature." Washington v. Garrett, 10 F.3d 1421, 1437 (9th Cir. 1993) (quoting Irwin v. Veterans Admin., 498 U.S. 89, 95-96 (1990)). Defendants' motion is governed by Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).

---

[21] Id. at 16.

-7-

There is a general six-year statute of limitations for civil actions against the United States. 28 U.S.C. § 2401(a). This six-year statute of limitations applies to APA claims such as those asserted by the State in its second amended complaint in intervention. See Wind River Mining Corp. v. United States, 946 F.2d 710, 712–13 (9th Cir. 1991). "If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision. Similarly, if the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years of the decision." Id. at 715; see also Ctr. for Biological Diversity v. Salazar, --- F.3d ---, 2012 WL 3570667, at *7 (9th Cir. 2012) (holding that facial challenges to regulations must be brought within six years of the regulation being promulgated). "If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." Wind River Mining, 946 F.2d at 715.

In its First Claim for Relief, the State alleges that "[o]n their face, the regulations at 36 C.F.R. § 1.2(a)(3) and 36 C.F.R. § 13.2 violate section 103(c) of ANILCA, 16 U.S.C. § 3103(c), which excludes State-owned lands and waters from units of the national

park system in Alaska and prohibits application of Park Service regulations on such lands and waters."[22] This is plainly a facial challenge to the regulations, which were promulgated in 1996. It is apparent from the face of the State's second amended complaint in intervention that the State's First Claim for Relief is barred by the six-year statute of limitations.

In its Second Claim for Relief, the State alleges that NPS's application and enforcement of the regulations at issue are <u>ultra vires</u> because they violate section 103(c) of ANILCA; and in its Fourth Claim for Relief, the State seeks to enjoin the application and enforcement of the regulations because they are <u>ultra vires</u>. Defendants argue that these two Claims for Relief are also barred by the six-year statute of limitations, even though they appear to be "as applied" challenges, because the "as applied" exception only applies to individuals who belatedly learn about agency action. Defendants cite to <u>Wind River</u> in support of this contention. There, the plaintiff was allowed to challenge the agency's 1979 establishment of wilderness study areas more than six years later because "no one was likely to have discovered that the BLM's 1979 designation of [a] particular WSA was beyond the agency's authority until someone actually took an interest in that particular piece of property, which only happened when Wind River staked its mining

---

[22]Second Amended Complaint in Intervention for Declaratory Judgment and Injunctive Relief at 15, ¶ 56, Docket No. 45.

claims." Wind River, 946 F.2d at 715. Defendants also cite to North County Community Alliance, Inc. v. Salazar, 573 F.3d 738 (9th Cir. 2009), for support. There, the plaintiff was allowed to challenge a 1993 agency decision to approve a gaming ordinance more than six years later because the plaintiff had no reason to know that the agency's approval was beyond the agency's authority until construction began on a casino in 2006. Id. at 742-43. Defendants insist that in each of these cases, the plaintiff was a stranger to the administrative process who had no reason to know of the agency action when it first occurred.

In contrast here, defendants argue that the State was no stranger to the 1996 rulemaking. As proof, defendants have submitted a copy of the State's comments on the proposed rule, which were dated February 2, 1996, and in which the State contended that "[t]he regulations would substantively and inappropriately extend NPS jurisdiction."[23] Defendants also submit an April 19, 2000 letter which the State submitted to the NPS objecting to a NPS regulation that "prohibits personal watercraft (PWC) in areas of the National Park Service" because the NPS was "unilaterally extend[ing] jurisdiction to lands and waters lawfully owned and managed by the

---

[23] Letter from Bruce Botelho, Attorney General, to Maureen Finnerty, Associate Director, Operations, National Park Service, at 1, Exhibit 2, Defendants' Motion to Dismiss the State of Alaska's Second Amended Complaint, Docket No. 48.

-10-

State...."[24] Defendants argue that plainly the State knew of the alleged impact of the 1996 rules long before now and that the State should not be allowed to challenge the 1996 rules at this late date. Defendants contend that the State is basically attempting to bring a facial challenge to the 1996 rules by disguising that challenge as an "as applied" challenge, which is contrary to the principle recognized in Shiny Rock Mining Corporation v. United States, 906 F.2d 1362, 1365 (9th Cir. 1990), that statutes of limitations should not be interpreted so as to render them meaningless or nullified. Defendants argue that the six-year statute of limitations would be nullified if the State were allowed to challenge regulations that it was aware of back in 1996.

The court is unpersuaded that the "as applied" exception only applies to strangers to the rulemaking process. That is not what Wind River holds. Wind River holds that an "as applied" challenge "may be brought within six years of the agency's application to the specific challenger...." Wind River, 946 F.2d at 715 (emphasis added). Although the State cannot base its "as applied" challenge on the application of the regulations to private individuals, one of the allegations in the State's complaint involves State employees. The State alleges that in 2010, Alaska state employees

---

[24]Letter from Sally Gilbert, State CSU Coordinator, to Chip Davis, National Park Service, Exhibit 4, Defendants' Motion to Dismiss the Sate of Alaska's Second Amended Complaint, Docket No. 48.

-11-

were told "that a specimen collection permit was required to conduct genetic sampling work that would take place solely on a State-owned navigable waterway (the Alagnak River) located with the boundaries of Katmai National Park and Preserve."[25] This allegation is sufficient to support the State's "as applied" challenge. The State's Second and Fourth Claims for Relief are not barred by the statute of limitations.

## Conclusion

Defendants' motion to dismiss[26] is granted in part and denied in part. Defendants' motion is granted as to the State's First Claim for Relief, and this claim is dismissed with prejudice. Defendants' motion is denied as to the State's Second and Fourth Claims for Relief.

DATED at Anchorage, Alaska, this <u>19th</u> day of September, 2012.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[25]Second Amended Complaint in Intervention for Declaratory Judgment and Injunctive Relief at 12, ¶ 52b, Docket No. 45.

[26]Docket No. 48.