IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


JOHN STURGEON,             )
                               )
                   Plaintiff,  )
                               )
    and                       )
                               )
STATE OF ALASKA,         )
                               )
        Plaintiff-Intervenor,  )
                               )
    vs.                       )
                               )
SUE MASICA, et al.,     )
                               )   No. 3:11-cv-0183-HRH
                   Defendants.  )
_____)


DECISION


    I.  <u>Procedural History</u>.  In this action brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06, plaintiff John Sturgeon and plaintiff-intervenor the State of Alaska bring "as-applied" challenges to National Park Service ("NPS") regulations.  Sturgeon and the State have timely filed their opening summary judgment briefs,[1] to which defendants have responded.[2] Sturgeon and the State timely filed their reply briefs[3] and defen-

_____

[1]Docket Nos. 77 & 81.

[2]Docket No. 84.

[3]Docket Nos. 97 & 98.

dants[4] have timely filed their sur-reply[5] as contemplated by the court's scheduling order.[6]  Oral argument has been heard.

On September 14, 2011, Sturgeon commenced this action.  In Count I of his complaint, he seeks a declaration that the application of NPS regulations on lands belonging to the State of Alaska that are within NPS conservation system units created or expanded by the Alaska Native Lands Conservation Act (herein "ANILCA") are void as applied to him.[7]  In Count II of his complaint, Sturgeon seeks a declaration that "any regulations purporting to authorize the NPS to enforce regulations which are solely applicable to public lands within conservation units on lands owned by the State of Alaska, including navigable waters, within NPS conservation units created or expanded by ANILCA are void."[8]  In Count III, Sturgeon requests an order enjoining defendants "from interfering with [his] operation of his hovercraft on state-owned navigable waters within the Yukon-Charley" Rivers National Preserve (herein "Yukon-Charley").[9]  In Count IV, he requests an order enjoining defendants "from enforcing NPS regulations, which are solely applicable to public lands within federal conservation system

_____

[4]Defendants are Sue Masica, Greg Dudgeon, Andee Sears, Jonathan Jarvis, the National Park Service, Sally Jewel, and the United States Department of the Interior.

[5]Docket No. 101.

[6]Docket No. 74 at 2.

[7]Complaint for Declaratory Judgment and Injunctive Relief at 14-15, ¶ 46, Docket No. 1.

[8]Id. at 16, ¶ 51.

[9]Id. at 17, ¶ 55.

units, on lands belonging to the State of Alaska, including naviga-
ble waters, within the boundaries of NPS conservation units in
Alaska that were created or expanded by ANILCA."[10]

In its second amended complaint in intervention,[11] the State
asserted four claims for relief. The State's first claim for
relief was a facial challenge to the regulations in question.[12] In
its second claim for relief, the State seeks a declaration that the
application and enforcement of 36 C.F.R § 1.2(a)(3) and § 13.2
violates § 103(c) of ANILCA.[13] In its third claim for relief, the
State seeks a declaration that the Secretary's denial of the
State's petition for rule-making was arbitrary and capricious.[14]
In its fourth claim for relief, the State seeks injunctive relief
prohibiting the application and enforcement of the regulations in
question on State-owned lands and waters.[15]

By order of September 19, 2012,[16] the court rejected the
State's first claim for relief which was a facial challenge to the
NPS regulations at issue here because that claim was time-barred.
Defendants now contend that both Sturgeon and the State are in fact
bringing facial challenges in the guise of an "as-applied" chal-

---

[10]Id. at 18-19, ¶ 60.

[11]Docket No. 45.

[12]Id. at 15, ¶¶ 56-57.

[13]Id. at 15, ¶¶ 58-59.

[14]Id. at 15, ¶¶ 60-63.

[15]Id. at 15, ¶¶ 64-65.

[16]Docket No. 53.

lenge.  Sturgeon and the State have pled as-applied challenges.
The facts upon which Sturgeon and the State rely demonstrate appli-
cation of NPS regulations to the respective activities of Sturgeon
and the State.  The court will address the as-applied claims.

In their briefing to the court, the State and defendants
briefly discuss whether or not the State is challenging 36 C.F.R.
§ 13.2.[17]  The court finds no evidence in the record that the defen-
dants applied 36 C.F.R. § 13.2 to the State.  As discussed herein-
after, the principal issue here is the applicability of 36 C.F.R.
§ 1.2 (which regulation addresses the applicability of Title 36,
Part 2, as well as 36 C.F.R. Part 13 regulations) to the conduct of
Sturgeon and the State.

II.  <u>Statutory/Regulatory Background</u>.

A.  <u>Alaska Native Claims Settlement Act</u>.  In 1971, Congress
enacted the Alaska Native Claims Settlement Act ("ANCSA") for pur-
poses of addressing and resolving outstanding aboriginal claims of
Native Alaskans which began to accrue in 1867 when the United
States purchased Russian-America (Alaska).  In addition to a mone-
tary settlement and the conveyance of some 40 million acres of land
to be divided amongst 220 Native villages and 12 regional corpora-
tions, ANCSA created the joint Federal-State Land Use Planning
Commission for Alaska[18] and, by § 17(d)(2)(A), made provision for
the withdrawal from public domain 80 million acres of unreserved

---

[17]36 C.F.R. § 13.2 addresses the applicability and scope of the
Part 13 regulations which have application to NPS units in Alaska.

[18]43 U.S.C. § 1616. For convenience, we refer in the text of
this discussion to ANCSA and ANILCA sections by statutory number,
with parallel United States Code sections in a footnote.

public lands in Alaska for potential addition to or creation of new units of the national parks, forests, wildlife refuges, and wild and scenic river systems.[19]

B.  <u>Alaska National Interest Lands Conservation Act</u>.  Based upon the work of the Commission, Congress in 1980 enacted ANILCA. In furtherance of the ANCSA § 17(d)(2)(A) withdrawals, Title II of ANILCA makes provision for the creation of or additions to the NPS. Section 201 established new "units of the National Park System [which] shall be administered by the Secretary under the laws governing the administration of such lands and under the provisions of this Act[.]"[20]  Included as a new area was Yukon-Charley, "containing approximately one million seven hundred and thirteen thousand acres of public lands, as generally depicted on map numbered YUCH-90, 008[.]" § 201(10).[21]  Section 201(10) expressly sets forth the purposes for this withdrawal, one of which was the maintenance of the environmental integrity of the Charley River Basin in its undeveloped, natural condition.

Section 202 of ANILCA[22] adds to existing NPS units.[23]  Included by § 202(2)[24] is an addition to the Katmai National Monument[25] of

---

[19]43 U.S.C. § 1616(d)(2)(A).

[20]16 U.S.C. § 410hh.

[21]16 U.S.C. § 410hh(10).

[22]16 U.S.C. § 410hh-1.

[23]16 U.S.C. § 410hh-1.

[24]16 U.S.C. § 410hh-1(2).

[25]Renamed Katmai National Park by § 202(2).

1,037,000 acres of public land, to be known as Katmai National Preserve ["Katmai"]. Katmai is to be administered to protect habitat, including fish populations, and to protect scenic geological, cultural, and recreational features. § 202(2).[26]

Included in Yukon-Charley are the lower reaches of the Nation River. Included in Katmai is the Alagnak River.[27]

For purposes of the implementation of ANILCA, that act contains definitions which are critical to understanding the act. The key terms are "land," "federal land," and, most important of all, "public lands." "Land" means "lands, waters, and interests therein." § 102(1).[28] "Federal land" means "lands the title to which is in the United States" after the date of enactment of ANILCA. § 102(2).[29] "Public lands" means "land situated in Alaska which," after the date of enactment of ANILCA are Federal lands, except:

> land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska of the State under any other provision of Federal Law.

---

[26]16 U.S.C. § 410hh-1(2).

[27]The Alagnak River is also designated by § 601(25) as a wild and scenic river within the NPS. 16 U.S.C. § 1274(a)(25).

[28]16 U.S.C. § 3102(1).

[29]16 U.S.C. § 3102(2).

§ 102(3)(A).[30]  Finally, "conservation system unit" is defined to include the various NPS units addressed by ANILCA.  § 102(4).[31]  Yukon-Charley and Katmai are conservation system units for purposes of ANILCA.

Collapsing the foregoing definitions for ease of discussion of the circumstances in this case, "public lands" are waters or interests in waters in Alaska owned by the United States in 1980. Excluded from public lands are interests in land and/or water confirmed or granted to the State of Alaska under any federal law.

Somewhat buried in the "maps" section of ANILCA is § 103(c)[32] which is at the heart of this litigation:

> Only those lands within the boundaries of any conservation system unit which are public lands (as such term is defined in this Act) shall be deemed to be included as a portion of such unit.  No lands which, before, on, or after December 2, 1980, are conveyed to the State, to any Native Corporation, or to any private party shall be subject to the regulations applicable solely to public lands within such units.  If the State, a Native Corporation or other owner desires to convey any such lands, the Secretary may acquire such lands in accordance with applicable law (including this Act), and any such lands shall become part of the unit, and be administered accordingly.

C.  <u>National Park Service Administration Improvement Act and Regulations</u>.

> In order to facilitate the administration of the national park system, the Secretary of the Interior is authorized, under such terms

---

[30]16 U.S.C. § 3102(3)(A).

[31]16 U.S.C. § 3102(4).

[32]16 U.S.C. § 3103(c).

and conditions as he may deem advisable, to
carry out the following activities:

....

Promulgate and enforce regulations concern-
ing boating and other activities on or
relating to waters located within areas of the
National Park System, including waters subject
to the jurisdiction of the United States:
Provided, That any regulations adopted pursu-
ant to this subsection shall be complementary
to, and not in derogation of, the authority of
the United States Coast Guard to regulate the
use of waters subject to the jurisdiction of
the United States.

16 U.S.C. § 1a-2(h).

Relying upon and in furtherance of the above act, the

Secretary of the Interior had adopted by 1997 the following general

provision of Title 36 of the Code of Federal Regulations for areas

administered by the NPS. Section 1.2[33] provides as follows:

Applicability and scope.

(a) The regulations contained in this chap-
ter apply to all persons entering, using,
visiting, or otherwise within:

(1) The boundaries of federally owned lands
and waters administered by the National Park
Service;

....

(3) Waters subject to the jurisdiction of
the United States located within the boun-
daries of the National Park System, including
navigable waters and areas within their ordi-
nary reach (up to the mean high water line in

---

[33]The parties have discussed at length the history of 36 C.F.R.
§ 1.2. Because this 1997 regulation is clear and unambiguous, and
because the court has before it only as-applied challenges to the
NPS regulations, there is no need to delve into the development of
§ 1.2. It is the interplay between § 1.2 and ANILCA § 103(c) which
is critical to a disposition of this case.

places subject to the ebb and flow of the tide
and up to the ordinary high water mark in
other places) and without regard to the owner-
ship of submerged lands, tidelands, or low-
lands;

        ....

        (5) Other lands and waters over which the
United States holds a less-than-fee interest,
to the extent necessary to fulfill the purpose
of the National Park Service administered
interest and compatible with the nonfederal
interest.

        (b) The regulations contained in parts 1
through 5, part 7, and part 13 of this chapter
do not apply on non-federally owned lands and
waters or on Indian tribal trust lands located
within National Park System boundaries, except
as provided in paragraph (a) or in regulations
specifically written to be applicable on such
lands and waters.

36 C.F.R. § 1.2(a), (b).

        Summarizing the foregoing, subsections (a)(1) through (5) of
§ 1.2 apply to everyone going within the boundaries of all NPS
administered lands in the United States.  Navigable waters within
the boundaries of such lands are subject to regulation, irrespec-
tive of ownership of submerged lands.[34]

        The Secretary of the Interior has also promulgated 36 C.F.R.
Part 13, containing regulations applicable to the NPS units in
Alaska.  Section 13.2(a) provides:

        The regulations contained in part 13 are
prescribed for the proper use and management
of park areas in Alaska and supplement the
general regulations of this chapter. The gen-
eral regulations contained in this chapter are
applicable except as modified by part 13.

---

        [34]For reasons explained hereinafter, the provisions of
§ 1.2(a)(5) do not come into play in this case.

36 C.F.R. § 13.2(a).  With respect to park areas, § 13.2(b) pro-
vides:

>        Subparts A through F contain regulations
> applicable to park areas.  Such regulations
> amend in part the general regulations con-
> tained in this chapter.  The regulations in
> subparts A through F govern use and manage-
> ment, including subsistence activities, within
> the park areas, except as modified by special
> park regulations in subparts H through V.

36 C.F.R. § 13.2(b).

In furtherance of his/her general administrative duties, the
Secretary of the Interior has promulgated specific regulations
which pertain to entries within the boundaries of NPS administered
lands using hovercraft or helicopters.  Title 36, Code of Federal
Regulations, § 2.17(e), provides that "[t]he operation or use of
hovercraft is prohibited."  Section 2.17(a)(3) provides that the
following is prohibited:

>        Delivering or retrieving a person or object
> by parachute, helicopter, or other airborne
> means, except in emergencies involving public
> safety or serious property loss, or pursuant
> to the terms and conditions of a permit.

36 C.F.R. § 2.17(a)(3).

Part 2 regulations, including § 2.17(a)(3) and (e), are ex-
pressly subject to § 1.2(a), as provided by § 1.2(b).  Part 13
regulations are also subject to § 1.2(a), as provided by § 1.2(b),
except to the extent that Part 13 regulations modify or amend the
general regulations. Sturgeon and the State have not pointed to,
and the court does not perceive there to be any amendment of the
subparts A through F, Alaska-specific regulations with respect to

park areas.[35]   Therefore, the regulations specific to the use of helicopters and hovercraft have application within the boundaries of Yukon-Charley and Katmai, including the navigable waters of those NPS administered areas, **unless** Sturgeon and the State are correct in arguing that 36 C.F.R. § 1.2 (and therefore §§ 2.17(a)(3) and (e) and Part 13 as well) does not apply within the boundaries of Yukon-Charley and Katmai because of the provisions of ANILCA § 103(c).[36]

III.  <u>Factual Background</u>.  Sturgeon's complaint and the State's second amended complaint in intervention focus upon their respective use of the Nation River and the Alagnak River.  The lower reaches of the Nation River are within the boundaries of Yukon-Charley.  The upper reaches of the Alagnak River are within the boundaries of Katmai.  Both Yukon-Charley and Katmai are national parks created or expanded by ANILCA §§ 201 and 202.  The Nation River arises in the Ogilvie Mountains of Yukon Territory, Canada, near the U.S. border, and flows in a southerly direction into Alaska and then into the northeastern quadrant of Yukon-Charley where it ultimately joins the Yukon River. The Alagnak River arises in the Aleutian Range south of Lake Iliamna and flows in a westerly

---

[35]There are, in subparts H and O, special regulations applicable to the Alagnak River as a wild river and to Katmai National Park and Preserve.  The Alagnak regulation has to do with bear viewing.  36 C.F.R. § 13-550.  The subpart O regulations contain general provisions with respect to fishing, wildlife viewing, firearms, and the use of Lake Camp and Brooks Camp Developed Area. 36 C.F.R. §§ 13.1202-1242.

[36]16 U.S.C. § 3103(c).

direction through Katmai National Preserve. The Alagnak empties into Kvichak Bay, then into Bristol Bay.

It is undisputed that those portions of the Nation and Alagnak Rivers which are the subject of this litigation are within a conservation system unit as defined by § 102(4) and that both rivers have been determined to be navigable. Because the Nation and Alagnak Rivers are navigable, the State holds title to the lands under the navigable waters in trust for the people of Alaska, "that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties." Ill. Cent. R. Co. v. State of Ill., 146 U.S. 387, 452 (1892); Alaska v. United States, 545 U.S. 75, 78-79 (2005).[37]

Sturgeon alleges that while he was on a moose hunting trip in 2007, the NPS informed him that he could not use his small personal hovercraft on the Nation River within the boundaries of the Yukon-Charley. Sturgeon alleges that upon returning from his hunting trip, he had phone conversations and met with Andee Sears, a special agent for the NPS, who "reaffirmed the NPS's position that use of a hovercraft within the boundaries of the Yukon-Charley is a crime ... and warned plaintiff that he would be criminally cited if

_____

[37]"The common-law public trust doctrine has been incorporated into the constitution and statutes of Alaska." State, Dep't of Natural Resources v. Alaska Riverways, Inc., 232 P.3d 1203, 1211 (Alaska 2010). "The people of the state have a constitutional right to free access to and use of the navigable or public water of the state" and "[t]he state has full power and control of all of the navigable or public water of the state, both meandered and unmeandered[.]" AS § 38.05.126(a), (b).

he ever again operated the hovercraft within the Yukon-Charley".[38]
In October 2010, Sturgeon petitioned the NPS "to engage in rule-
making to repeal or amend NPS regulations so that the NPS would no
longer assert the authority to restrict access on navigable waters
located within the boundaries of park areas in Alaska."[39]  Sturgeon
received no response to his petition.[40]  On July 26, 2011, Sturgeon
sent a letter to the regional chief ranger of the Alaska district
of the NPS, requesting that the chief ranger "confirm in writing
whether I will be able to launch in the Yukon or the lower reaches
of the Nation with my hovercraft so I can access that part of the
Nation upriver from the Yukon-Charley boundary."[41] Sturgeon received
no response to this letter.[42]

In 2010, the Alaska Department of Fish and Game was required
to apply to defendants for a scientific research and collecting
permit to conduct genetic sampling on chum salmon in the Alagnak
River.[43]  "Access to State lands was to be by helicopter...."[44]

---

[38]Complaint for Declaratory Judgment and Injunctive Relief at
11, ¶ 36, Docket No. 1.

[39]Id. at 12, ¶ 40; see also, Exhibit A, Complaint for
Declaratory Judgment and Injunctive Relief, Docket No. 1.

[40]Id. at 13.

[41]Exhibit B at 2, Complaint for Declaratory Judgment and
Injunctive Relief, Docket No. 1.

[42]Complaint for Declaratory Judgment and Injunctive Relief at
13, ¶ 41, Docket No. 1.

[43]Second Amended Complaint in Intervention [etc.] at 12, ¶ 52b,
Docket No. 45.

[44]Id. at 13.

On September 30, 2010, the State petitioned the Secretary of the Interior to repeal or amend § 1.2(a)(3) to make it inapplicable to Alaska, with a corresponding repeal of the revisions to 36 C.F.R. § 13.2.[45]  The petition was denied on January 13, 2012.[46]

IV.  Jurisdiction.

The parties disagree as to whether Sturgeon and the State have standing to bring their as-applied regulatory claims with respect to the Kobuk and Yukon Rivers.[47]  Sturgeon mentions the Yukon River in his complaint, but he has not asserted any separate claim based upon the Yukon River; and the NPS regulations that Sturgeon is challenging were applied to him with respect to his use of a hover-craft on the Nation River within Yukon-Charley.  Similarly, the State never pled any factual allegations relating to its access to the Kobuk National Park.  The court therefore concludes that it is defendants' application of 36 C.F.R. § 1.2 and the related Part 2 regulations to Sturgeon and the State with respect to their opera-tions on the Nation and Alagnak Rivers which is before the court.  Claims as to the Kobuk and Yukon Rivers have not been put before the court.

V.  Standard of Review.

"Summary judgment is a suitable vehicle for resolution of a challenge to agency action under the Administrative Procedure

---

[45]Id. at 11, ¶ 44.

[46]Id. at 11, ¶ 46.

[47]Defendants concede that this court has jurisdiction over Sturgeon's claims based on the Nation River and the State's claims based on the Alagnak River.  Defendants' Sur-Reply on Motions for Summary Judgment at 4, Docket No. 101.

Act...."  Western Watersheds Project v. Salazar, 766 F. Supp. 2d 1095, 1104 (D. Mont. 2011) (citing Nw. Motorcycle Ass'n v. United States Dep't of Agric., 18 F.3d 1468, 1471-72 (9th Cir. 1994)). "However, unlike the typical civil summary judgment resolution, the [c]ourt does not make findings of fact or determine the existence of genuine issues of material fact."  Id.  "The [c]ourt must instead review the Administrative Record that was before the federal agency at the time it made its decision to determine whether the record supports the agency's decision...."  Id.

    "'Because this case involves an administrative agency's construction of a statute that it administers, [the court's] analysis is governed by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837....'"  Rodriguez v. Smith, 541 F.3d 1180, 1183 (9th Cir. 2008) (quoting Mujahid v. Daniels, 413 F.3d 991, 997 (9th Cir. 2005)).  "Under the Chevron framework" the court "must 'first determine[] if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear.'"  Id. at 1184 (quoting Mujahid, 413 F.3d at 997).  "'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  Id. (quoting Chevron, 467 U.S. at 842-43).  "'[I]f the statute is silent or ambiguous with respect to the specific issue,' the court moves to step two of the Chevron inquiry, and considers 'whether the agency's answer is based on a permissible construction of the

statute.'" <u>Blandino-Medina v. Holder</u>, 712 F.3d 1338, 1343 (9th Cir. 2013) (quoting <u>Chevron</u>, 467 U.S. at 843).

VI.  <u>Discussion</u>.

Sturgeon and the State argue that the NPS general regulations may not be applied to them because of § 103(c) of ANILCA.[48]  They point out that 36 C.F.R. § 1.2 purports to grant the NPS regulatory authority over state-owned navigable waters within the boundaries of Yukon-Charley and Katmai.  They contend that § 103(c) of ANILCA forbids the NPS from exercising its regulatory authority over state-owned navigable waters within park boundaries in Alaska.

The first sentence of § 103(c) provides:

> Only those lands within the boundaries of any conservation system unit which are public lands (as such term is defined in this Act) shall be deemed to be included as a portion of such unit.[49]

It is clear beyond any room for discussion that the river beds and waters of the Alagnak and Nation Rivers are lands within the boundaries of Yukon-Charley and Katmai, both of which are ANILCA conservation system units.  The first sentence of § 103(c) provides that only "public lands" are part of the respective conservation units (Yukon-Charley and Katmai).  The State's submerged lands – the beds of the Nation River and the Alagnak River – are owned by the State, not the United States.  The river beds are not included in – are not part of – conservation units Yukon-Charley or Katmai.

---

[48]16 U.S.C § 3103(c).

[49]16 U.S.C § 3103(c).

The State's submerged lands – the beds of the Nation River and the Alagnak River – are not the only interests to be addressed. For purposes of ANILCA, "land" means land or water or interests in them. The State owns "the natural resources within such lands and waters." 43 U.S.C. § 1311(a). The United States is entitled to regulate and improve navigation on navigable waters in furtherance of commerce. United States v. 32.42 Acres of Land in San Diego County, 683 F.3d 1030, 1037 (9th Cir. 2012). However, the federal government's rights as regards navigation is not an interest in land for purposes of ANILCA. Alaska v. Babbitt, 72 F.3d 698, 702-03 (9th Cir. 1995) ("Katie John I").[50] The Katie John I decision stands for the further proposition that the United States may have reserved water rights with respect to navigable waters within ANILCA conservation units; and where such reserved water rights exist, the United States does own public land for purposes of ANILCA. Id. at 703-04. The State claims to "own" the waters of the Nation and Alagnak Rivers. Defendants contend that the United States owns reserved water rights in the Nation and Alagnak Rivers, thereby making the rivers "public lands" for purposes of ANILCA.

Each of the United States and the State have correlative rights with respect to navigable waters. But we need not decide here which if any of the correlative rights with respect to the navigable waters (as distinguished from submerged lands) of the Nation and Alagnak Rivers are owned by the State or the United

---

[50]Katie John I "remains controlling law" despite Katie John II. John v. United States, 720 F.3d 1214, 1226 (9th Cir. 2013).

States, or whether such interests are or are not public land.  The principal issue in this case is whether or not 36 C.F.R. § 1.2(a) (and therefore also § 2.17 and Part 13) applies to the respective operations of Sturgeon and the State within the boundaries of Yukon-Charley and Katmai.  The first sentence of § 103(c) does not address that issue.

The second sentence of § 103(c) does address the application of Title 36 regulations.  It reads:

> No lands which, before, on, or after December 2, 1980, are conveyed to the State, to any Native Corporation, or to any private party shall be subject to the regulations applicable solely to public lands within such units.[51]

The parties disagree as to whether the beds of the Nation and Alagnak Rivers, and such other rights as the State may own, were "conveyed to the State."  The river beds were not transferred to the State by means of a deed or patent such as the federal government routinely uses in transferring selected lands from public domain to the State.  Here, there is no evidence of a conveyance of river beds to the State.  However, § 102(3)(A) of ANILCA expressly provides that "lands which have been confirmed to ... or granted to the Territory of Alaska or the State under any other provision of Federal law" are excluded from "public lands."[52]  The State acquired title to the beds of the Nation and Alagnak Rivers under the Statehood Act, Pub. L. No. 85-508, 72 Stat. 339 (1958), and the Submerged Lands Act, 43 U.S.C. §§ 1311-15.  Because of the State

---

[51]16 U.S.C. § 3103(c).

[52]16 U.S.C. § 3102(3)(A).

ownership of the river beds, those river beds are not "public lands" for purposes of ANILCA. § 102(3).[53] However, the fact that the beds of the Nation and Alagnak Rivers are not public lands does not answer the question: "Does 36 C.F.R. § 1.2 and the underlying specific regulations of 36 C.F.R. Part 2 or Part 13 nevertheless have application to the activities of Sturgeon and the State within the boundaries of Yukon-Charley and Katmai?" On its face, § 1.2 has application to them because, on the facts of this case, both Sturgeon and the State entered and carried on activities "within ... [t]he boundaries of federally owned lands and waters administered by the National Park Service...." 36 C.F.R. § 1.2(a). Again, subsection (a) is applicable by the terms of 36 C.F.R. § 1.2(b), and application of § 1.2(a) does not depend upon ANILCA or the State's rights as to navigable waters.

Assuming for the sake of discussion that the beds of the Nation and Alagnak Rivers which the State owns by virtue of the Submerged Lands Act are deemed to have been "conveyed" to the State for purposes of § 103(c) of ANILCA,[54] the second sentence of § 103(c) is dispositive in this case. The regulations which § 103(c) excludes from application to State lands are those "regulations applicable solely to public lands within such units."[55] Title 36, C.F.R. § 1.2, and Part II of Title 36 (including § 2.17) were enacted by the Department of the Interior pursuant to its

---

[53]16 U.S.C. § 3102(3).

[54]16 U.S.C. § 3103(c).

[55]16 U.S.C. § 3103(c).

general authority to adopt regulations for all NPS administered lands and waters.  None of those regulations was adopted "solely" to address entry upon or use of various equipment on public lands within ANILCA-created conservation units such as Yukon-Charley and Katmai.

There are regulations contained within Title 36 which have been adopted and are "applicable solely to public lands within [ANILCA units]."  36 C.F.R. § 103(c).[56]  Part 13 of Title 36 contains the regulations which are applicable to NPS units in Alaska, including Yukon-Charley and Katmai.  The Part 13 regulations "supplement the general regulations...."  36 C.F.R. § 13.2(a).  Part 13 regulations might "modify" or "amend" general regulations applicable to park areas.  36 C.F.R. § 13.2(a) and (b).  But Part 13 regulations have not altered or amended the helicopter or hovercraft regulations of § 2.17.

It is arguable that Part 13 regulations do not apply to state-owned submerged lands within Yukon-Charley and Katmai because of § 103(c).[57]  But the regulations which expressly proscribe the use of hovercraft and helicopters within the boundaries of NPS administered lands are contained in Part 2 of Title 36, not Part 13.  The regulations contained in Part 2, and in particular §§ 2.17(e) and 2.17(a)(3) are not regulations applicable solely to public lands within conservation system units.  They are regulations of general application across the entirety of the NPS.

---

[56]16 U.S.C. § 3103(c).

[57]16 U.S.C. § 3103(c).

The foregoing disposes of Sturgeon's and the State's claims based upon NPS regulations. There remains the State's third claim for relief by which the State seeks review of the defendants' denial of its petition for rule-making. The State did not present any argument with respect to its third claim in its opening brief. Defendants contend that the claim has been abandoned. The State contends that it addressed this claim because, if the challenged regulations are invalid, then it was arbitrary and capricious of the defendants to deny the State's petition for rule-making. Inasmuch as defendants have prevailed with respect to the application of 36 C.F.R. § 1.2, it follows that the denial of the State's petition for rule-making was not arbitrary or capricious.

VII. <u>Conclusion</u>

The court concludes that 36 C.F.R. § 1.2(a), §§ 2.17(e) and 2.17(a)(3) were properly applied to the respective operations of Sturgeon and the State.

Sturgeon's complaint[58] is dismissed with prejudice. Intervenor the State of Alaska's second amended complaint[59] is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

DATED at Anchorage, Alaska, this <u>30th</u> day of October, 2013.


<u>/s/ H. Russel Holland</u>
United States District Judge

---

[58]Docket No. 1.

[59]Docket No. 45.